**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

**101 West Lombard Street**
**Baltimore, Maryland 21201**
**MDD_DRMChambers@mdd.uscourts.gov**
**(410) 962-7770**

September 28, 2026

LETTER TO ALL COUNSEL OF RECORD

Re: *Brittany W. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 25-3175-DRM

Dear Counsel:

On September 24, 2025, Plaintiff Brittany W. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 11) and the parties' briefs (ECF Nos. 9, 15, 25 and 27). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further consideration. This letter explains why.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on February 20, 2022, alleging a disability onset of February 5, 2021. Tr. 69. Plaintiff's claims were denied initially and on reconsideration. Tr. 69. On September 25, 2024, an Administrative Law Judge ("ALJ") held a hearing. Tr. 69. Following the hearing, on October 16, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 et seq., during the relevant time frame. Tr. 83-84. The Appeals Council denied Plaintiff's request for review, Tr. 1-5, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged

period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 5, 2021, the alleged onset date." Tr. 71. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "postural orthostatic tachycardia syndrome (POTS); syncope; asthma; attention-deficit hyperactivity disorder; bipolar disorder; and anxiety disorders." Tr. 72. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 72. The ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she has required a sit/stand option exercisable in intervals of 30 minutes, during which she must be allowed to alternate between sitting/standing for up to 2 minutes while remaining on-task. She can occasionally climb ramps/stairs, balance, stoop, kneel, and crouch, but never climb ladders/ropes/scaffolds or crawl. She must avoid concentrated exposure to extreme cold/heat, wetness and/or humidity, excessive vibration, pulmonary irritants (e.g., fumes, odors, dust, and poorly ventilated areas), and chemicals; and must further avoid any exposure whatsoever to unprotected heights, hazardous machinery, and/or commercial driving. Mentally, she is limited to simple, routine, repetitive tasks requiring only simple decisions. She can have no fast-paced production requirements and can tolerate only a few workplace changes. She can have no interaction with the public, and only occasional interaction with coworkers and supervisors.

Tr. 74. At step four, the ALJ determined that Plaintiff was unable to perform past relevant work. Tr. 82.[1] At step five, the ALJ determined Plaintiff could perform other jobs that existed in significant numbers in the national economy such as ink printer, final assembler, and lens inserter. Tr. 83. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 83-84.

## III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The

[1] The ALJ's decision does not specify what that past relevant work was. Based on the surrounding context, this section of the decision appears to unintentionally omit a quotation from the vocational expert's (VE's) hearing testimony. Tr. 82. The transcript of the oral hearing reflects that the VE classified Plaintiff's prior jobs as medical assistant and patient representative, but with each performed at medium exertion, rather than their default exertional levels of light and sedentary, respectively. Tr. 106.

findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. <u>ANALYSIS</u>

Plaintiff is proceeding *pro se* and the Court has considered her two submissions, ECF Nos. 9 and 15, collectively as the Plaintiff's Brief called for under Supp. Soc. Sec. R. 6. *See Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002) ("the long-standing practice is to construe *pro se* pleadings liberally.") (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). "When reviewing a *pro se* Social Security appeal, the Court must '(1) examin[e] whether the SSA's decision generally comports with regulations, (2) review[ ] the ALJ's critical findings for compliance with the law, and (3) determin[e] from the evidentiary record whether substantial evidence supports the ALJ's findings.'" *Elsir S. v. Kijakazi*, No. BAH-22-2602, 2023 WL 5831171, at *3 (D. Md. Sept. 8, 2023) (quoting *Young R. v. Comm'r Soc. Sec. Admin.*, No. SAG-18-2980, 2019 WL 2078637, at *1 (D. Md. May 10, 2019)). Applying this standard, the Court has identified two areas requiring remand for further clarification.

First, despite record evidence that Plaintiff's "frequent and unpredictable" syncopal episodes had required her to "remain largely housebound," Tr. 81, *see* Tr. 1095, the ALJ did not discuss the effects of Plaintiff's potential absenteeism on her ability to sustain employment. *See Dennis v. Kijakazi*, No. 21-2078, 2023 WL 2945903, at *5 (4th Cir. Apr. 14, 2023) (holding that an "ALJ's failure to discuss the record evidence regarding [the plaintiff's] absenteeism 'results in our inability to provide meaningful review'") (citing *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019)).[2] The *Dennis* court explained that "[t]his was error because we can only guess why the ALJ failed to address the obvious implications of [the plaintiff's likely absences due to] frequent medical treatment" where the VE had testified that "missing more than 7 to 10 days per year 'would be subject to firing.'" *Id*.

The ALJ stated he included restrictions in the RFC to account for Plaintiff's reported fainting. Tr. 78 ("and due, further, to the risks presented by the claimant's unpredictable syncope, I find that she is limited to sedentary work, with additional sit/stand option as specified. . . .Based on the claimant's syncope as well as her historically reported dizziness, I find the claimant has the

---

[2] Unpublished Fourth Circuit opinions are "cited for the persuasiveness of their reasoning, not for any precedential value." *Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 580 (D. Md. 2022).

postural and environmental limitations specified above; the latter being due to the risks inherent in fainting in dangerous environments (e.g., environments involving chemicals, or driving)").

Additionally, the ALJ considered Plaintiff's syncope and dizziness when evaluating the medical opinions of consultative examiner Matthew Silver, M.D. Tr. 81. In evaluating Dr. Silver's opinion from Plaintiff's March 11, 2023, physical consultative examination, the ALJ disagreed with Dr. Silver's opinion that Plaintiff could lift or carry up to 20 lbs, "given that a fainting impairment makes it an inadvisable injury risk for" Plaintiff. Tr. 81. However, the ALJ found Dr. Silver's "environmental contentions," which included limits on climbing, heights, balancing, and operating machinery, "are persuasive, given the need to reduce the claimant's risk of injury upon fainting." Tr. 81. In evaluating Dr. Silver's opinion from Plaintiff's January 27, 2024, physical consultative examination, the ALJ found Dr. Silver's opinion that Plaintiff had "no physical limitations whatsoever," except "those that might occur during a syncopal episode," "unpersuasive,… due to inconsistencies established in comparison to other evidence of record; including evidence that, in 2024, the claimant reported ongoing syncope 3 times per week, with dizziness once per week." Tr. 81.

Despite addressing in detail the dangers that fainting might pose in a work environment and including corresponding RFC limitations, the ALJ did not discuss whether Plaintiff's conditions may result in unscheduled or additional time off work. This omission is notable given that Dr. Silver stated that Plaintiff's "limitations are based on frequent and unpredictable recurrences of near or actual syncopal episodes which have resulted in her needing to remain largely housebound at this time." Tr. 1095. This observation by Dr. Silver was not merely a repetition of something Plaintiff had self-reported to him; earlier in his report he stated:

> RECORDS REVIEW:
>
> The following records from the state agency were received and reviewed: Claimant has had progressively worsening postural orthostatic tachycardia syndrome since age 12 which results in her having frequent and unpredictable rapid heart rate episodes with near syncope and actual fainting spells occurring up to 3 or 4 times weekly. She also has recurrent chest pains with these episodes and sometimes independent of them. *She has had to dramatically limit her activities due to the unpredictability of the fainting episodes* including no longer being able to drive. Multiple trials of various medications and sodium supplementation have not been effective in controlling her condition thus far. No additional records provided by the claimant.

Tr. 1090 (emphasis added). The ALJ acknowledged that "Dr. Silver also noted that the claimant's syncopal episodes were frequent and unpredictable, resulting in her need to remain largely housebound," but did not discuss this information further. Tr. 81.

At the oral hearing, the VE testified that employers tolerate absences of "nothing greater than one day per month, and that includes tardiness that's not weather-related, and then the inability to complete the shift, doctor's appointments, whatever," and no more than 10 percent

time off task in addition to regularly scheduled breaks. Tr. 107-108. Yet, the ALJ did not discuss whether Plaintiff's frequent and unpredictable syncopal episodes would result in absences, tardiness, or unscheduled breaks, and what effect this would have on Plaintiff's employability in light of the VE's testimony.

This Court has held in similar situations that "[t]he ALJ did not have to accept Plaintiff's argument that [she] would be prohibited from all work, but they did have to explain why given this evidence and the VE's testimony, Plaintiff would be able to maintain employment. Absent such explanation, the Court cannot conduct a meaningful review." *Zekeria Y. v. Bisignano*, No. AAQ-25-2082, 2026 WL 2671675, at *3 (D. Md. Sept. 11, 2026)); *see also Helen B. v. O'Malley*, No. GLS-23-02345, 2024 WL 3690812, at *6 (D. Md. Aug. 7, 2024) ("the ALJ did not account for unscheduled absences in the RFC, nor did the ALJ discuss Plaintiff's potential absenteeism elsewhere in her opinion" despite record evidence that "there were multiple months where Plaintiff would have missed work more than two times per month due to mental health hospitalizations," "nor does [the ALJ] logically explain how Plaintiff could work given the VE's testimony that missing work two days per month precludes employment."). Accordingly, remand is required for the ALJ to "discuss the record evidence regarding" Plaintiff's frequent inability to leave her home due to syncopal episodes and "how [Plaintiff's] absenteeism affects her ability to work." *Dennis,* 2023 WL 2945903, at *6.

The second reason why remand is required for further clarification is that the ALJ employed a term in both the RFC and a hypothetical to the VE, "no fast-paced production requirements," Tr. 74, 107, that is the same or analogous to terms that the Court has previously found to be ambiguous and not susceptible to judicial review. "Different individuals can have different conceptions of what work is or is not 'fast.'" *Ginger N. v. Comm'r, Soc. Sec. Admin*., No. SAG-18-1830, 2019 WL 1903548, at *4 (D. Md. Apr. 29, 2019) (quoting *Crocetti v. Comm'r. Soc. Sec.*, No. SAG-17-1122, 2018 U.S. Dist. LEXIS 95697 at *3 (D. Md. June 6, 2018)). As the Court determined in *Trena Sue Y.*, without explanations about what the ALJ meant by the term "requiring no fast paced production," what the VE understood that term to mean, or what would qualify as work "requiring no fast paced production," "the Court cannot evaluate whether substantial evidence supported the ALJ's determinations…that plaintiff could perform [the identified] jobs." *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075, 2021 WL 4034264, at *4 (D. Md. Sept. 3, 2021). *See Wendy S. v. Saul*, No. DLB-19-3553, 2021 WL 168444, at *3 (D. Md. Jan. 19, 2021) ("I cannot discern what the ALJ actually meant by 'no fast pace or strict production requirements.'"); *Joeann S. v. Bisignano*, No. AAQ-25-1954, 2026 WL 2110570, at *3 (D. Md. July 22, 2026) ("Without an understanding of what 'no fast paced production requirements' means, it is not possible to determine where the logical explanation lies between the provided evidence and the stated conclusion."); *Lyaundra C. v. Bisignano*, No. DRM-24-3659, 2026 WL 507423, at *4 (D. Md. Feb. 24, 2026) ("'fast-paced' and 'high-volume' are purely relative terms"). It is therefore difficult for the Court to ascertain whether the RFC finding in this case was supported by substantial evidence, *see Thomas*, 916 F.3d at 311-312, *as amended* (Feb. 22, 2019), or whether it was possible for the VE to know whether a person limited to "no fast-paced production requirements," could perform the job functions of ink printer, final assembler, and lens inserter. On remand, the ALJ should provide clarification about the scope of the restriction contemplated.

In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V. CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge